UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEAN ARCHER & JULIET ARCHER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-1621** |
| **PIERRE G. WALKER, III** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for Failure to State a Claim upon which Relief Can Be Granted, and/or for Abstention/Dismissal Under Rooker-Feldman & Burford filed by defendant, Pierre G. Walker, III (Doc. #8) is **GRANTED**, and plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, filed by defendant, Pierre G. Walker, III. Walker argues that plaintiffs' claims against him are prescribed.

On July 14, 2014, plaintiffs, Jean Archer and Juliet Archer, filed this action against Walker alleging claims under Louisiana state law for breach of contract, theft, fraud and mismanagement.[1] Plaintiffs essentially allege that Walker stole money from them in various ways beginning in 1996.

In 1996, Walker married Katherine Archer, who is Jean's daughter and Juliet's sister. Plaintiffs allege that in 1997, Walker stole money belonging to Katherine and Jean that was

---

[1] On July 31, 2013, plaintiffs filed a nearly identical action against Walker. Archer v. Walker, Civil Action No. 13-5198, Doc. #1 (E.D. La.). On October 21, 2013, they amended the complaint to include Katherine Archer as a plaintiff. Id. at Doc. #4. Walker was served on November 15, 2013. Id. at Doc. #5. On June 9, 2014, this court granted Walker's motion to dismiss for lack of subject matter jurisdiction finding that Katherine Archer and Walker were both Louisiana domiciliaries. Id. at Doc. #21. It is uncontested that this court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a)(2), because Walker is a Louisiana domiciliary, plaintiffs are citizens or subjects of foreign states, and there is more and $75,000 in controversy. Katherine Archer is not a party to this suit.

generated from the sale of a business that they operated before Katherine married Walker. Plaintiffs also allege that in 1997, Katherine and Jean lent Walker $25,706 to repay student loans, that he misappropriated some of the money for personal purposes and never repaid Katherine and Jean. Plaintiffs allege that "from 1996 through 1998, Pierre Walker defrauded and misappropriated money from the Archer family, and attempted to disguise his activities as legitimate real-estate ventures." Plaintiffs claim that this alleged "misappropriation and misuse of Archer-family money began to become evident in 1998," and thereafter Katherine, Jean and Walker:

> entered into a contractual obligation under which Pierre Walker undertook to use all properties held by [Walker's limited liability company], Pierre Walker and Katherine Archer jointly, or by Pierre Walker personally, together with any Archer-family money remaining or later-obtained, for the purpose of earning back and repaying the Archer-family money stolen and misappropriated by Pierre, through properly managed real-estate ventures. These were to be conducted through a new limited liability company, that was to be owned 50% by Katherine Archer and 50% by Pierre Walker. . .

The resulting limited liability company was named Tannington Properties, LLC. Walker and Katherine, who shared equal 50% ownership interests in the company, signed the Articles of Organization and an Operating Agreement. Walker was designated as its manager. Plaintiffs allege that $300,000 of Archer-family money was placed in Tannington Properties' bank account, "to be used only in accord with the Articles of Organization and Operating Agreement . . ., which in turn was an implementation of the contractual obligations among the Archers and Pierre Walker."

In 1998 and 1999, the Archer family home in London, England, to which Katherine held the title, was "compulsorily purchased by Westminster City Council," and the initial payment of $622,659.23 was deposited into a Tannington Properties bank account "pending distribution among

Archer family members, including [Jean and Juliet]." Plaintiffs allege that Walker stole this money and failed to distribute any of it to Katherine, Jean or Juliet.

Plaintiffs allege that Walker stole Archer-family money from 1999 through 2003. Specifically, they allege that:

- Walker forged Katherine's signature on at least one check for $10,000 drawn on her personal account.

- On December 11, 2000, Walker forged Katherine's signature on a letter to her agent in the United Kingdom, "in an effort to misappropriate for himself the remaining money" due from the Westminster City Counsel for Archer family home.

- Walker "forced Katherine Archer to pay over to him essentially all of the substantial funds which she, her mother Jean Archer, and her sister Juliet Archer had in their private accounts prior to the marriage [which] continued until Pierre left the marriage [in 2003]."

- In 1999, Walker misappropriated "Archer-family money held in the name of Tannington Properties, LLC . . . [by] essentially emptying that account over the course of 9 months with US$278,000 in unexplained, unauthorized withdrawals."

- On October 29, 2001, January 31, 2002 and September 22, 2003, Walker "forced Katherine Archer to make loans, never reimbursed, to Tannington Properties, LLC to meet various emergencies caused by Pierre's mismanagement and misappropriation of the initial capital and income of the [company]."

- On April 16, 2003, Walker sold, without Katherine's consent, a property purchased by Tannington Properties with funds belonging to Katherine, Jean and Juliet, which was "in contravention of the Tannington Properties, LLC operating agreement and all other agreements and obligations that existed among Pierre Walker, Katherine, Jean, and Juliet Archer, regarding the use and management of Archer-family funds."

- Walker "failed to pay taxes or insurance premiums on the properties, or properly maintain the properties, causing [two] properties to go to tax sale, which had to be redeemed with Jean Archer's money."

- In May 2003, Walker withdrew "substantial sums of money" from his and Katherine's bank accounts, "including money that was the property of the Archer family," and engaged in "other theft and misappropriation of all of the cash reserves of Tannington Properties, LLC, Katherine personally, and the Archer family . . ."

- Walker "stole from the matrimonial domicile . . . the most valuable items of furniture, carpets, silver, china, and other furnishings, including a unique set of genuine original chairs by Sheraton, which were an Archer-family heirloom temporarily entrusted to Katherine Archer." This supposedly occurred before Katherine filed for divorce on June 6, 2003.

- In 2003 and 2004, Walker "collected large advance discounted payments of rents" from the tenants of two of Tannington Properties' properties, "taking the money for himself, and depriving Tannington Properties, LLC of the rents."

Plaintiffs also allege that Walker "put Archer-family money at risk" from 2000 through 2008 by failing "to file personal tax returns for himself, joint returns for himself and Katherine, or business tax returns for Tannington Properties, LLC . . ." Further, they allege that Walker failed to file any annual report with the Louisiana Secretary of State form 2006 through 2009, which caused Tannington Properties to be classified as inactive and "stripped Katherine and the Archer family of the protection afforded by the Tannington Properties, LLC entity and its operating agreement, and contractual obligations owed by Pierre Walker to the Archer family."

In August 2005, Walker and Katherine's former matrimonial domicile, which they still jointly owned, was damaged by Hurricane Katrina. Jean financially assisted Katherine after the disaster and helped her file a lawsuit against the homeowner's insurer. That lawsuit was settled in 2009, and Jean and Katherine "took joint control of approximately US$250,000 of the insurance settlement money, . . ., and used that money to complete the outstanding repairs to the Jeannette-Street house and to reimburse Jean Archer for post-hurricane expenses and repairs Jean had already paid for." Plaintiffs claim that Jean "intended to distribute at least US$80,000 of the insurance-settlement-reimbursement money to . . . Juliet . . ., as partial payment of Juliet's share of the sale of the [Archer family home], which Pierre Walker never made. . . " Plaintiffs allege that Walker engaged in fraud and theft on December 5, 2012, by filing suit in Louisiana state court against

4

Katherine to recover his virile share of the insurance proceeds. That court ruled that the insurance proceeds were community property, and Walker was entitled to his virile share.

Walker argues in his motion to dismiss this suit that all of Jean and Juliet's claims against him are prescribed. Plaintiffs argue that the claims are not prescribed under the doctrines of contra non valentem and continuing tort.

## ANALYSIS

### A.   Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at 1965. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to her claim." Id. at 498-99 (internal citations omitted).

**B.     Prescription**

Generally, the party raising a prescription argument bears the burden of proving its application. Roane v. Jones, 116 So.3d 700, 707 (La. Ct. App. 2013) (citing McKinley v. Scott, 17 So.3d 81 (La. Ct. App. 2009)).  However, when a defendant "shows that the petition is prescribed on its face, the plaintiff bears the burden of proving [that] the prescriptive period has been suspended, interrupted or renounced." Wilhike v. Polk, 999 So.2d 83 (La. Ct. App. 2008) (citing Lima v. Schmidt, 595 S.2d 624 (La. 1992)).  Once prescription has run, it cannot be suspended. Dominion Expl. & Prod., Inc. v. Waters, 972 So.2e 350, 362 (La. Ct. App. 2007) (citing Geiger v. State ex rel Dept. of Health & Hosp., 815 So.2d 80 (La. 2002)).  "The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings." Fishbein v. State ex rel. La. State Univ. Health Sci. Ctr., 898 So.2d 1260, 1265 (La. 2005) (citing Starns v. Emmons, 538 So.2d 275, 277 (La. 1989)).

   **1. Delictual Actions**

Plaintiffs allege that Walker committed fraud and theft, i.e. conversion, by taking money that belonged to them.  Delictual actions, such as fraud and conversion, prescribe one year from the day the injury or damage is sustained. LA. CIV. CODE art. 3492; Roane, 116 So.3d at 707; Reed v. Abney, 928 So.2d 585, 588 (La. Ct. App. 2006).  Plaintiffs allege various instances in which they claim Walker damaged them by committing fraud and theft from 1997 to 2004, by stealing money from

them.² Plaintiffs did not file this action until July 14, 2014. Thus, the claims are prescribed on the face of the complaint. Plaintiffs argue that the application of the doctrines of contra non valentem and continuing tort prevent their claims from being prescribed.

### a. Contra Non Valentem

Contra non valentem is a jurisprudential doctrine whereby prescription is suspended when a person cannot file suit. Carter v. Haygood, 892 So.2d 1261, 1268 (La. 2005) (citing FRANK L. MARAIST AND THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 10-4(b), 22 (1996)). The Supreme Court of Louisiana has recognized four circumstances where the doctrine of contra non valentem is applied to suspend the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

Marin v. Exxon Mobil Corp., 48 So.3d 234, 245 (La. 2010). Contra non valentem is only to be applied in exceptional circumstances and "will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." Id. at 245-46. "Further,

---

² This court will not consider the allegations regarding Walker's December 5, 2012, suit against Katherine regarding the insurance proceeds, which was previously decided by the state court when it held that Walker was entitled to a portion of the insurance proceeds because they were community property.

7

'prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act.'" Id. at 246.

Plaintiffs argue that this doctrine applies because, before Katherine filed for divorce in 2003, "Walker stripped the house of substantively all documentation of business and financial transactions, and therefore of all evidence of fraud and mismanagement," and they only learned of the fraud after Walker produced documents in discovery in the domestic case.

Plaintiffs have not established that contra non valentem applies. Plaintiffs admit in their complaint that in 2001, they engaged attorney Harry P. Pastuszek, Jr. to investigate Walker's dealings. On July 17, 2001, "Pastuszek sent a letter to Louisiana attorney Jean Morgan Meaux, attorney for Pierre Walker, listing Pierre's improper activities and the specific amounts of money misappropriated up to that date." The letter also requested an accounting and stated that it was "to further put [Walker] on notice that the Archers no longer wish for Walker to act on their behalf or in any way to purport to represent their interests, individually or jointly or in any legal entity in which they have an interest." Thus, as of July 17, 2001, plaintiffs were clearly aware of Walker's alleged fraud and theft. Plaintiffs could have discovered, through Katherine and without access to any documents, that Walker allegedly stole and concealed: Walker's allegedly forcing her to make loans to Tannington Properties on October 29, 2001, January 31, 2002, and September, 2003; his April 16, 2003, sale of a Tannington Properties property; his May 2003 withdrawals of money from his and Katherine's bank accounts; and, his alleged theft of property from the matrimonial domicile. Further, plaintiffs were clearly aware of Walker's alleged failure to pay taxes and insurance premiums because they allege that the properties were redeemed from the tax sale with Jean's

8

money. Moreover, Walker's alleged theft and concealment of financial documents in 2003 could not have impacted plaintiff's ability to discover his alleged actions regarding obtaining cash rent payments from Tannington Properties' tenants in 2004. Therefore, plaintiffs have not demonstrated that prescription was interrupted on their fraud and theft claims by the doctrine of contra non valentem.

### b. Continuing Tort

Plaintiffs also argue that the doctrine of "continuing tort applies to Walker's continuing pattern of fraud, theft, misappropriation, and mismanagement of Archer-family money."

Under Louisiana law, the continuing tort doctrine is an exception to the general rule of prescription. Washington v. State, Dept. of Pub. Safety, 2014 WL 2558205 (La. Ct. App. 6/4/2014). "When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages has ended." Id. (citing Bustamento v. Tucker, 607 So.2d 532 (La. 1992)). "To determine whether a continuing tort exists, the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." Global Mktg. Solutions, LLC v. Blue Mill Farms, Inc., - - - S.3d - - -, 2014 WL 4656572, at *6 (La. Ct. App. 9/19/2014) (citing Marin v. Exxon Mobil Corp., 48 So.3d 234, 253 (La. 2010)).

Plaintiffs allege that Walker engaged in specific instances of fraud and theft. Although they allege many instances over the span of many years, these actions were distinct from one another and caused distinct and identifiable damages. There was no continuing, ongoing single action, with

continuing damages. Therefore, plaintiffs have not established that the continuing tort doctrine applies to their fraud and theft claims against Walker.

Because plaintiffs' tort claims have prescribed on the face of the complaint, and plaintiffs' have not established that prescription was suspended or interrupted, Walker's motion to dismiss plaintiffs' fraud and theft claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

**2.  Breach of Contract and Fiduciary Duty**

Plaintiffs allege that Walker breached a contract he made with Katherine and Jean when he misappropriated funds they lent him in 1997 to repay student loans.  They also allege that Walker breached a contract and his fiduciary duty to them in his mismanagement of Tannington Properties. Specifically, plaintiffs allege that Jean and Katherine entered into a contract with Walker that resulted in the formation of Tannington Properties.  All of the remaining substantive allegations against Walker involve his alleged breach of his fiduciary duty as the manager of Tannington Properties, which resulted in the loss of Archer-family money.

**a. The 1997 Loan**

Article 3494(1) of the Louisiana Civil Code provides that the liberative prescription period for actions on money lent is three years.  Plaintiffs allege that Jean lent money to Walker in 1997 to repay student loans, and that he has never repaid the money to Jean.  Plaintiffs have not established that the three year prescriptive period was suspended or interrupted regarding this loan. Therefore, this claim is prescribed.

### b. Fiduciary Duty Regarding Walker's Management of Tannington Properties[3]

Under Louisiana law, a suit for breach of fiduciary duty "is generally a personal action governed by the ten-year prescriptive period of" Article 3499. Slayter & Slayter, LLC v. Ryland, 953 So.2d 1000, 1004 (La. Ct. App. 2007) (citing Beckstrom v. Parnell, 730 So.2d 942 (La. Ct. App. 1998)). However, the time limitations for bringing an action against a manager of a limited liability company are governed by Louisiana Revised Statutes § 12:1502, which provides, in pertinent part:

> A. The provisions of this Section shall apply to all business organizations formed under the laws of this state and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated. . .
>
> B. The term "business organization" includes any entity formed under the laws of this state engaged in any trade, occupation, profession, or other commercial activity including but not limited to professions licensed by a state or other governmental agency. This Section shall apply without limitation to . . . limited liability companies . . .
>
> C. No action for damages against any person described in Subsection A of this Section for . . . breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and

---

[3] A member-manager of a limited liability company has a fiduciary duty to the limited liability company and its members. LA. REV. STAT. § 1314(a)(1). "Member" is defined as "a person with a membership interest in a limited liability company." Id. at § 12:1301(A)(13). A "membership interest" is "a member's rights in a limited liability company, collectively, including the member's share of the profits and losses of the limited liability company, the right to receive distributions of the limited liability company's assets, and any right to vote or participate in management." Id. at § 1301(A)(14). Plaintiffs do not allege that they are members of Tannington Properties, but that as financiers, Walker owed them a fiduciary duty in his management of the limited liability company. Under certain circumstances, investors can be deemed members of a limited liability company. See Destiny Servs., L.L.C. v. Cost Containment Servs., L.L.C., 2011 WL 4375318 (La. Ct. app. 9/20/2011). For the purposes of this motion, it is assumed that Walker owed plaintiffs a fiduciary duty as is alleged in the complaint. See Ratcliff v. S. C/P/D Inc., 64 Fed. Appx. 417 (5th Cir. 2003) (The court takes the allegations of the complaint as true in considering a Rule 12(b)(6) motion to dismiss).

>proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.
>
>D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.
>
>E. The time limitations provided in this Section shall not be subject to suspension on any grounds or interruption except by timely suit filed in a court of competent jurisdiction and proper venue.

Plaintiffs allege that Walker breached his fiduciary duty in various ways beginning in 1998, with the misappropriation of funds, and ending in 2009, with the failure to file Tannington Propeties' annual report with the Louisiana Secretary of State. Whether these actions are characterized as non-intentional actions or intentional actions, plaintiffs' claims based on them are prescribed under La. Rev. Stat. § 12:1502(C) and (D), because either way, plaintiffs were required to file suit in a court of competent jurisdiction by 2012, which they did not. Therefore, Walker's motion to dismiss plaintiffs' claims for breach of fiduciary duty is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

**CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for Failure to State a Claim upon which Relief Can Be Granted, and/or for Abstention/Dismissal Under Rooker-Feldman & Burford filed by defendant, Pierre G. Walker, III (Doc. #8) is **GRANTED**, and plaintiffs' claims are **DISMISSED WITH PREJUDICE**.[4]

New Orleans, Louisiana, this __7th__ day of January, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**

---

[4] Walker alternatively moves for abstention or dismissal under the Rooker-Feldman & Burford abstention doctrines. It is unnecessary to discuss this argument because the court finds that plaintiffs' claims against Walker are prescribed.